IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICHARD MICHAEL CUSTER,**

        **Plaintiff,**

**v.**                                                            **Civil Action No. 2:08cv54**
                                                                            **(Judge Maxwell)**

**WV NORTHERN REGIONAL JAIL,**
**JAMES SPENCER, SHAR MURRIN MASON,**
**LT. MIDCAP AND CAPT. STOCKGLASS,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action against the above-named defendants on February 29, 2008. Dckt 3. By Order entered January 15, 2009, the plaintiff's claims against the Northern Regional Jail were dismissed with prejudice and the remaining defendants were directed to answer the complaint. Dckt. 33. The defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, on February 10, 2009. Dckt 42.

Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on February 11, 2009, advising the plaintiff of his right to respond to the defendants' motion. The plaintiff filed a response on February 25, 2009. This case is before the undersigned for a report and recommendation.

### II. Contentions of the Parties

**A. The Complaint**

In the complaint, the plaintiff asserts that he was verbally harassed by Corporal Stockglass. In addition, the plaintiff asserts that during his criminal proceedings he turned states evidence

against more than 100 people. The plaintiff asserts that he made defendants Mason, Midcap, Stockglass and Spencer aware of this information and requested that they provide him protection because of it. The plaintiff asserts that he gave the defendants a list of names, but was told by defendant Mason that he "dug his own hole," and "they" did not have to offer him any protection. In further support of his claim, the plaintiff also asserts that medical staff sat him next to people that he had informed on, causing the plaintiff to be assaulted.

Next, the plaintiff asserts that he had "keep away" orders between himself inmates Haner and McIntyre. However, while in the hole, the guards let Haner and McIntyre out of their cells at the same time the plaintiff was out of his. The plaintiff asserts that Haner and McIntyre tried to assault him several times, but he was able to escape into his cell. Moreover, the plaintiff asserts that Haner was allowed to threaten and harass him. The plaintiff asserts that as a result of the constant threats and fear for his life, his psychotropic medications had to be increased.

The plaintiff also asserts that while he was in the hole, he was not allowed to watch TV, order cakes and coffee, go to church, go to Bible study, take regular classes, interact with other inmates or do any type of rehabilitation. He was also allegedly denied writing materials and postage for legal mail. Furthermore, the plaintiff was allegedly denied toe nail clippers which resulted in his having surgery to remove a toe nail that had been medically neglected.

The plaintiff then asserts that he filed numerous requests for help, but that no one was willing to help him. To the contrary, the plaintiff asserts that the guards left him alone with other inmates who had threatened him and put him on busses with people who spat at him and threatened him. In addition, the plaintiff asserts that the defendants purposely put him in areas with the people he testified against and allowed those people to throw spit balls at him, spit in his food trays and to

throw urine and feces in his cell.

The plaintiff was allegedly allowed to come out of his cell only from 1:00 a.m. to 4:00 a.m. to take showers and make phone calls. The plaintiff asserts that this interfered with his ability to contact his lawyer. The guards also allegedly allowed the other inmates to read the plaintiff's legal mail, which contained information about the persons he gave states evidence against. The plaintiff alleges that he attempted to grieve these issues through the administrative remedy process, but was unsuccessful.

Finally, the plaintiff asserts that the defendants eventually moved him to Tygart Valley Regional Jail ("TVRJ"). At that time, however, they also moved 15 other inmates who knew what the plaintiff did to the same place. When the plaintiff arrived at TVRJ, he told his counselor about his situation and he was immediately placed in protective custody. Since then, the plaintiff asserts that staff at the TVRJ has taken the necessary measures to protect his safety, while at the same time, allowing him to go to church, attend Bible study, go to medical and have library books to read. As a result, the plaintiff asserts that the doctor at TVRJ lowered the dosage on his medications because he has calmed down so much. Moreover, the plaintiff asserts that he is now at the Mount Olive Correctional Complex, being held in special management for his safety.

As relief, the plaintiff seeks, among other things, ten million dollars ($10,000,00) in damages from every defendant, and court costs.

**B.    The Defendants' Motion**

In response to the complaint, the defendants assert that the plaintiff's complaint is due to dismissed or denied for the following reasons:

(1) the plaintiff has failed to exhaust administrative remedies;

(2) the plaintiff's claim is barred by Eleventh Amendment immunity and the Will Doctrine;

(3) qualified good faith immunity shields the defendants from liability in their individual capacities; and

(4) the plaintiff alleges no injury.

**C. The Plaintiff's Response**

In his response to the defendants' motion, the plaintiff asserts that summary dismissal of his claims is not appropriate because there are material facts still in dispute. Moreover, the plaintiff reiterates his claim that his Eighth Amendment constitutional rights were violated and that the defendants were responsible. The plaintiff also asserts that the defendants are not shielded by qualified immunity and that his claim is not barred by Eleventh Amendment immunity or the Will doctrine. Finally, the plaintiff asserts that he did not fail to exhaust his administrative remedies, but instead, was transferred during the grievance process, thereby rendering his administrative remedies futile.

### III. Standards of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

B.  **Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of

evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001).

The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read *futility* or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6 (emphasis added).

For an inmate housed in a West Virginia Regional Jail facility, the inmate must first file a Level One grievance with the Administrator on an inmate grievance form which is to be provided by jail personnel. If unsatisfied with the Level One decision, the prisoner may proceed to Level Two by filing an appeal with the Chief of Operations. Such appeal must be filed, in writing, within five days of the receipt of the Administrator's decision and must include a copy of the initial complaint and the Administrator's decision. Within five (5) days of receipt of a Level Two decision, an inmate

---

[1] Porter at 524.

may request a review by the office of the Executive Director. The inmate must mail copies of the original Complaint and copies of all responses to the office of the Executive Director, Regional Jail Authority.

In the complaint, the plaintiff alleges that he attempted to exhaust administrative remedies. Complaint at 2. However, in their motion, the defendants assert that the plaintiff has failed to properly and completely exhaust his administrative remedies because he did not file an administrative grievance with the Chief of Operations or the Executive Director as to the claims raised in the complaint. Dckt. 43 at Ex. 2 (Affidavit of John L. King, II). In his response, the plaintiff asserts that an inmate is not required to complete the administrative remedy process when there is no possibility of further relief. Dckt. 52 at 3. The plaintiff then asserts that he initiated grievance procedures at the Northern Regional Jail as to his claims. *Id.* However, during that process, he was transferred to the Tygart Valley Regional Jail. *Id.* The plaintiff then states that because of his transfer he stopped pursuing these issues in the administrative remedy process. *Id.* The plaintiff asserts that he did so because the grievance process could no longer offer him relief and to continue exhaustion would be futile. *Id.*

Although the plaintiff may have attempted to exhaust his administrative remedies, it is clear from his response to the defendants' motion to dismiss that he abandoned those efforts after his transfer to the TVRJ. Accordingly, the plaintiff concedes that he has not fully and completely exhausted his administrative remedies as is required under the PLRA.

In <u>Woodford v. Ngo</u>, 548 U.S. 81, 89 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time

and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, at 93 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

There is simply nothing in the PLRA, or the pertinent caselaw, which supports the plaintiff's assertion that a transfer to another facility necessarily renders his administrative efforts futile. Accordingly, because the plaintiff concedes that he abandoned his administrative remedies prior to full and complete exhaustion, the plaintiff has clearly failed to exhaust his administrative remedies and his complaint should be dismissed.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (dckt. 42) be **GRANTED to the extent** that it seeks the dismissal of the plaintiff's claims for the failure to exhaust. Consequently, the undersigned further recommends that the plaintiff's complaint (dckt. 3) be **DISMISSED without prejudice** from the active docket of this Court.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140

(1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 24, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE